May it please the Court, Kurt Hermanson on behalf of Mr. Burton. In this case, Mr. Burton made a Ferretta motion on March 16, 2005 by stating, At this time, Your Honor, I would like to invoke my Sixth Amendment rights to represent myself as Counselor. That is a clear, unequivocal, and timely motion for self-representation. Was that issue ever raised, Counsel, before the California courts? It was raised by Mr. Burton in his petition for review to the California Supreme Court. Where did he raise it? Mr. Burton raised it at You have an ER site? It's 2ER. Mr. Burton is legally blind, so his handwritten pleadings are a little difficult to read. But 2ER 3839. So at the bottom of page 38 This is the handwritten notes over on the right-hand side where he's listed it down at the very bottom. Yeah, it goes from the bottom of page 38 to the top of page 2ER39. At the top of that page, I believe that's where he raises his request for counsel again, right? He says, Failing to rule on the timely Ferretta motion. Okay, but did it say March 16? It doesn't say March 16. This part has to refer to the June 1st request. Okay. Is there a reference to the March 16th request to represent himself? Before the California Supreme Court, on 2ER 42, he talks about prior to the March 24th. What does he say? He says, Timely Ferretta motion made prior to the 24 March 05 hearing. Okay. So that has to be He doesn't say March 16. But that has to be That has to There can only be the March 16 reference. It can only be the March 16 reference. Did you look to see whether he made a Ferretta motion in February?  Did he make a Ferretta motion in February? I'm not sure, Your Honor. Did you look? Yes. Am I supposed to look or am I supposed to take your word for it? If you didn't cite March 16th to the California courts, what were they supposed to look for? The California courts What is it their duty to look for if you can't point them in the record? You and by that I mean your client and anybody representing him. If you can't point to the specific request and say this is where I made my Ferretta motion, what is the duty of the California courts? I haven't looked at the February record to see whether he also made a Ferretta motion in February. You just told me you weren't sure whether he made one either. There might be several there. Are we supposed to go and look for those as well? No, Your Honor. But if we're not supposed to, then are the California courts supposed to have looked for the March 16th reference if you can't cite them to the page or tell them what the day was? Well, what the court's getting at is whether he fairly presented that client and that date. Right. So on the March and I mean, it's a difficult catch-22 because he's found competent, and yet the court, you know, doesn't want to delve into whether he's competent or not. And so he definitely raised the claim in the California courts, and without a doubt, he raised it in the federal court. So the question is, did he fairly exhaust it? And that issue isn't the Attorney General hasn't raised that issue, and they can under 2254B3, they can waive it expressly. So they can waive it implicitly. There's waiver of waiver, right? I mean, they can waive it implicitly by not raising it in their briefing. Yes, there is Ninth Circuit authority saying that if they don't raise it in their briefing, it is waived. But under 2254B3, it has to be expressed from counsel. So when we're in habeas land, it's a little bit different. Right. Well, would we make it a fact that they didn't ever raise waiver? I mean, it seems to me that people didn't notice his habeas petition to the California Supreme Court, and that it just seemed to not be discussed, basically, that the state relies on the California Supreme Court's summary denial on the direct appeal. It doesn't really discuss this other document. Well, what happens in these cases is everyone focuses on the last reasoned opinion, which is the California Court of Appeal opinion, which doesn't talk about anything except for March 21st. And that's what I'm really struggling with, counsel, to figure out how exhaustion and procedural default really plays into it, because everyone has briefed this case assuming that the decision that's before us for review is the last reasoned state court decision, which would be the California Court of Appeal. But the problem is that I can't discern from the briefing that March 16th was ever brought, presented to the California Court of Appeal. In fact, in the opening brief that Petitioner filed with the California Court of Appeal, Petitioner specifically stated that the very first time he raised a FARETA issue is in the March 24th hearing. Well, his state appellate attorney said that in the briefing. Right. But my point, counsel, is that given that that's the way it was briefed to the California Court of Appeal, that appellate made his first FARETA motion on March 24, 2005. So the last reasoned state court decision picks up on that because nobody alerted the California Court of Appeal to a potential challenge of a FARETA violation any earlier than that date. So the last reasoned state court decision then said that that March 24, 2005 challenge really doesn't create a problem. And now we're looking back, and I think what you're asking us to do is then to go look beyond the issues presented to the California Court of Appeal and to say that the earlier hearing on March 16th was problematic. But how can we through a deference say that this was a decision that was either contrary to law or an unreasonable application of facts to the law when that issue wasn't presented? And that's what I'm really struggling with. That's why I'm trying to flesh out the exhaustion issue with you. So the Cal – well, we have to assume because there's a presumption that the last – that when the California Supreme Court says petition for review denied, that it's on the merits. And so because if the issue was properly exhausted and raised, and I submit that it was because it says prior to March 24, 2005, and there was – and he did make an oral motion and it's in the transcript that he asked to represent himself. And certainly the June 1st one is fairly presented because he says he filed a timely – two weeks before trial. So the only thing that that could refer to is June 1st because he filed a motion on May 27, 2005, and that motion was heard on June 1, 2005. And so that was two weeks before trial that he filed that. So on the – I don't – can you – what happened to the sealed portion of the March 16 transcript? Because I can't find that in the record. It's not in the record. We can supplement. It's not – it wasn't anything that's relevant to the proceedings. No, no, I'm not talking about the excerpts of record. I'm talking about the 2,000 pages at stake. So have you read that? Have you read the sealed portion? I have read it, yes. Okay. Is that – was there anything pertaining to Ferretta in the sealed portion? Or was that exclusively a Marston? Right, it was Marston. It wasn't Ferretta, so it wasn't – So that's why it wasn't included in the excerpts. Right. He was complaining about his attorney, Charles Adair, and how he was asleep and not doing a good job. Okay. May I reserve my time? Oh, you can reserve your time, but I'll give you some time. But I just – there's one other thing I find puzzling in this record. So the California Court of Appeal notified the parties on December 5th that Burton's habeas petition will be considered at the same time as his direct appeal. So it knew it had the petition, and it was in front of it, but it never discusses anything other than the March 24 Ferretta request in the, you know, reasoned opinion. And then it summarily denies the pro se habeas petition. Right. The pro se habeas petition – the way he exhausted it was his petition for review. So the pro se habeas petition was things like – wasn't Ferretta. 2ER36 is his petition for review. Oh, I see. So you're relying on the pro se petition for review. Okay. All right. Thank you. You can have some time. Good morning. May it please the Court. Kelly Johnson, Deputy Attorney General on behalf of Apelli. I would like to first start with the issue concerning his pro se petition for review. It appears from the California Supreme Court's records that he subsequently withdrew that petition for review, and the California Supreme Court granted that on July 11, 2007. Where is that in the record? That is not part of the excerpt of the record. I'm sorry. I just found that. Is it part of the record? On appeal? Yeah. Was it any part of the record before anybody, before us today? It was part of the appellate record when he filed the petition for review, but it was not previously mentioned in the habeas proceedings. Did you make that argument? Or lodged. No, I'm just mentioning that to assist. So what do we have to rely on for that other than your word? I'm sorry. Well, I have the order right here. Well, you can't submit evidence for the first time before the court of appeal. And I'm not trying to, Your Honor. I'm just merely stating that this court, as you're aware. Well, you are. You're making that very argument that was not made in your briefs. I wasn't trying to make an argument concerning that. I'm just trying to help the court with the question regarding exhaustion, whether the 316. Because you're making an argument that it was not exhausted, right? I have not made that argument that it was not exhausted. Did you waive that argument? I do not believe I waived that argument. And my understanding from what the court of appeal did, it is presumed that the court of appeal, you know, follows what it's supposed to do. And to do that, it must have reviewed the entire record here. And the court of appeal's opinion indicates that the first unequivocal motion that Mr. Burton made was the March 24th motion. But having read the March 16 transcript, it is very clear that he made the motion on March 16. That was an equivocal motion. It was not unequivocal. He says, I want to make a Feretta motion very clearly. He stated, I would like to invoke my Sixth Amendment rights to represent myself. Once the court said, I will take that up after we resume the in limine motions we're in the process of, he said, excuse me, I'd like to make a Marsden first. That makes sense, doesn't it? Because if he's unsatisfied with his counsel, he wants first to see, you know, his counsel. He wants to get rid of his counsel that he thinks is not adequately representing him. But if he can't do that, then he wants to represent himself. Then he should have said that, and he didn't. He did nothing. He didn't. It sounds like he did. Well, he did. He said, I want to take up the Marsden first. I want to make a Feretta motion. And then, but wait, before you get to that, Your Honor, let's do the Marsden first. If it's granted, he gets new counsel. He might very well be satisfied. If it's denied, then the court then takes up the Feretta motion. It's not at all uncommon to raise those two motions in that sequence in state court, right? Now, I take it by your comments that the state's litigation position was that the March 16 matter was fairly presented to the California Court of Appeal. Correct. And that was the reason why the state didn't raise exhaustion? Correct, because the California Court of Appeal had the entire record before it, which obviously included the transcripts that included the March 16 proceedings. They reviewed the entire record, presumably, as their duty. And they, even appellate counsel, said the first motion was this March 24 motion, the first unequivocal motion, which makes it sound like everybody was in agreement here. But he's clearly wrong. I mean, so I don't know what we do with the fact that the counsel made an error with respect to that. Well, let's look at the March 16 motion again. I respectfully disagree that it was unequivocal. He was, by saying what he said and then after having the motion. You know, I don't think that's your best argument, because, really, our law doesn't say you have to continually reassert your right to self-determination. You know, the court said, I'm going to take that up later, I'm going to take that up later, and the court never took it up, right? The following week, eight days later, on March 24th, he raised it again. He mentioned Feretta again. He doesn't have an obligation. He makes the motion. He doesn't have to keep making the motion when the court says, I'll take that up later. But then should the court every time ask a defendant, do you wish to make the motion? No. The court says, I'll take that up later. So the court needs to address the motion, having denied the Marsden motion. When he first said, I would like to represent myself, the court said, we'll take that up later. Then he said, I mean Marsden or, excuse me, Marsden first. The court said, okay, we'll handle that, too. The court went through the rest of the in limine motions and then did address the Marsden hearing. And after the Marsden hearing, when the court did not appoint new counsel, different counsel, then they came back. They went through the remainder of the in limine hearings. It seems like Burton was satisfied with what went, with what occurred at the Marsden hearing. All right. You can drop that. Did you read the sealed transcript? I did not read the sealed transcript, Your Honor. I believe that, I believed that counsel would, if it had said something that showed that he resurrected that Feretta request. He had no obligation to resurrect the Feretta request. He had, and he clearly knows how to make a Feretta request. Do you have the sealed transcript in your possession? I do not. That you handily have this other document? Okay. I'd like a copy of the sealed transcript. Okay. I will get that to you, Your Honor. That's 2A is what you want, I believe. Can you submit that within five days of this hearing? Sure. Thank you. So you seem to keep making this argument that Burton had an obligation to keep, to keep the Feretta issue that the court was saying he'd rule on later. What is your authority for that proposition? Well, there is legal authority. Second case. Yes. It is McCaskill v. Wiggins. And that says that, that's a United States Supreme Court case. And it says that the abandonment of Feretta may be inferred from the defendant's conduct. And here, because he did not mention his Feretta motion again after the Morrison hearing and didn't do it, you know, he was in court. They were still hearing motions. He had every opportunity to do so, and he didn't. So his conduct by not mentioning it again, you can infer from that that he abandoned that Feretta request. When he came back eight days later and he mentioned it on March 24th, the court suspended proceedings to evaluate his competency. And he has – there's many more indicators that his subsequent conduct indicated that he intended to abandon that request. We don't agree with that inference, that that conduct, given the fact that he subsequently did actually raise it again, we can – leads to an inference that he abandoned it. What authority do you have that says that there's an affirmative obligation to keep reasserting Feretta? Well, there is nothing – I don't believe the United States Supreme Court has said that there is – that once it's mentioned, it is there forever. I do believe there – that there – But wait. I'm not asking for that. I'm asking you for any authority, even State authority, that the defendant has an obligation to keep making the same motion when the judge has indicated he'll rule on it later. Okay. Let's see. I have People v. Skaggs is a California case, which says that even if the defendant's comment were construed as a Feretta request, he abandoned it by failing to seek a definitive ruling. That's an abandonment again. Which is – which is my position as far as him not resurrecting it. He effectively withdrew it by saying, I want Marston. Marston means counsel. That is completely opposite of – No, it's – no, it's not necessarily completely opposite. That's the problem. They're mutually exclusive. No, they're not. They're priorities. They're – I mean, I mean, look, we've tried cases – I've tried cases, we've tried cases. We know there are preferences by the defendants that, you know, I'll do Marston first, then Feretta. So it's a priority. It's not necessarily – it's not mutually exclusive. So if we reject that argument, what's your next – what's your callback? Well, on April 27th in his letter that he filed with the Court on May 2nd and on June 1st, so this is just within two months of that hearing, he is saying, I can't represent myself because of my illnesses and my disease. At this point, it would be best if I have representation. What do we do with the fact that the trial court refused to read the letter because he couldn't decipher it? The court did read some of the letter, but that's irrelevant in light of the fact that Mr. Burton himself was telling the court, I don't want to represent myself. What if we don't interpret that letter the same way that the State does? I'm sorry, I didn't hear you. What if we don't interpret that letter the same way that the State does? What's your fallback on that? If you were to interpret it to say that it was a clear Feretta request? Yeah. His statements in court that same day were he – the day that they received that letter, that motion, the same day he says, I don't want to represent myself. At this time, I know it's better if I have counsel. But he just didn't want Mr. Adair, who was by that point his fourth attorney. And he simply did not – he said then, I don't want to represent myself. And this was still prior to trial. So even if there was an error by the court not ruling on the 316 statement, which I still think is an equivocal request, he – it's form over substance. He did not have a – he did not have trial still yet. His trial didn't start until July 19th. So he's just seeking to represent himself for eight days until proceedings are suspended for his competency to be evaluated. And after that, he's saying, I want to – I want counsel. I don't want to represent myself. And then he proceeds to trial. So there really is no harm even if he did – even if by the court failing to rule on that, because before trial, he is saying, I want counsel. I want counsel. And those are a – All right. Well, you're two minutes over – one and a half minutes over your argument time. It's over, you said? Yeah. Okay. Thank you. It's a red light. 1.35. I see that now. Thank you. Okay. Thank you. I think I interrupted at about two minutes. Thank you, Your Honor. Regarding the June 1st hearing, he didn't say, I don't want to represent myself. So that's an overstatement. The government supplemental excerpts of record at 16, I will concede to say that he had at that time a preference for counsel, because Mr. Burton stated, with my diseases and illness, I feel that I should have counsel. But as the Court recognizes, I mean, the motion says Ferretta all over it. It cites Ferretta cases. Then when he's in court, he says, you know, I have illnesses, I should have an attorney. But there wasn't – and the majority – the primary focus of the hearing was March 10th, on June 1st. But the Court had before it a Ferretta motion that it refused to read, that it didn't have to go past page one to see that it was a Ferretta motion, and didn't discuss Ferretta, didn't warn him about representing himself,  Let's say that we think that that statement, I'm ill and I really think I need counsel, that that made the motion equivocal. What do we do with the fact that here's somebody who raised, and let's say it's an unequivocal request on March 16th, and let's say the State Court just forgot about it in the crush of the calendar, with the Marsden coming up, with all the motions limiting, with, I'm sure, a crush of numerous other cases on calendar that day, the Court just simply forgot that he had initially asked for a Ferretta waiver. But one week later, the Court said, if I recall correctly, is there anything else that we need to take up? The defendant then says Ferretta again, and then let's say that the Court then appropriately handled it from there on out. What do we do with that sequence? And it's still prior to trial. Is that problematic, that the judge forgot on the first instance when the Court cured it just a week later and still prior to trial? Well, the timeline is March 16th is before. There were different trial dates, but March 16th is the oral motion for Ferretta. Then the day of trial, March 24th, there's the renewal of the Ferretta motion and a Marsden, and the judge suspends proceedings to do a competency hearing. And so the trial doesn't happen on March 24th and ends up happening way further in July. But he is found competent on May 24th. Right. So perhaps my question, and I apologize, perhaps might not have been clear. My point simply is that if somebody asked prior to trial for a Ferretta hearing and the Court simply forgot about it, but a week later the Court took it up again, and let's assume that the Court then appropriately handled the motion from there on out, why is that a problem that there was a one-week delay? I don't know that it would be a problem, but that's not what happened in this case. In this case, it was never appropriately addressed. One week later, the judge was found competent. But if we were to find that it's appropriately addressed from the second invocation of his Ferretta rights on, then is it your position that it wouldn't matter that the Court failed to address his motion on March 16th when it was raised for the first time? On March 16th, the Court had a duty to warn him about the dangers of representing himself and see if his Ferretta motion was, and the law is clear on that, see if his Ferretta motion should be granted. The Court failed to rule on it. And it's not ambiguous even if it is a combination Ferretta-Marsden motion, and Ninth Circuit law is clear on that. In Arlt, A-R-L-T, and in Hernandez, the Ninth Circuit has said in both those cases clearly that, in both those cases, the defendants raised both Ferretta and Marsden. And the Ninth Circuit, this Court, said a motion for substitution of counsel provided absolutely no basis to conclude that his Ferretta request was ambiguous. So that's in Arlt at page 520, 521. That's 41F3rd, 516, page 520 to 521, Ninth Circuit. And also in Hernandez, 203F3rd at 621, says the exact same thing, where it's not ambiguous when you raise both a Marsden and a Ferretta. Did Burton withdraw his petition for review before the Supreme Court? This is the first I have heard of that. So I don't know, Your Honor. All right. Thank you very much. Burton v. Kate will be submitted. And we will take up U.S. v. Johnson. Thank you.
judges: Wardlaw, Bybee, Nguyen